**Dury BRADFORD, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 582S180.

Supreme Court of Indiana.

Sept. 21, 1983.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Judge.

Defendant (Appellant) was convicted, after a jury trial, of Burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1979), found to be an Habitual Offender, Ind.Code § 35–50–2–8 (Burns Supp.1982), and sentenced to forty (40) years imprisonment.

This direct appeal raises four issues:

1. Whether the trial court erred in admitting into evidence other criminal conduct of the Defendant.

2. Whether the trial court erred by failing to arraign the Defendant on the habitual offender count.

3. Whether there was a defect in the verdict form on the habitual offender count.

4. Whether the trial court erred in setting Defendant's trial for a date beyond the seventy (70) day limit imposed by Ind.R. Crim.P. 4(B).

The record disclosed that on September 30, 1980, the Defendant and Michael Carter were riding in an automobile with James Bodie when Bodie was arrested for Driving While Intoxicated. Later, Bodie asked the Defendant to contact and request Nannie Gill, Bodie's grandmother, to make bond for him.

Ms. Gill testified that she observed Defendant and Carter enter the apartment building which she managed and in which Bodie, her grandson, lived. She saw the lights go off and crossed the street to investigate. After observing the Defendant hitting the door of Bodie's apartment with a chair, she left to call the police. Subsequently, she returned to the apartment building and observed Carter exit the building, obtain a piece of pipe, and return to Bodie's apartment where the pipe was used to break the padlock on the door. She then observed Defendant and Carter carrying clothes and preparing to steal a television set from Bodie's apartment.

At that time, the police arrived and found Carter, pipe in hand, and the Defendant coming down the steps. As the officers encountered Carter and the Defendant, an object, later identified as Bodie's watch, was dropped. The officers testified that when they entered Bodie's apartment they discovered clothing stacked in two piles and a ransacked chest of drawers.

Carter testified that when he and the Defendant arrived at Bodie's apartment building, the two separated and that Defendant had had no involvement in the crime.

\*    \*    \*

ISSUE I

Prior to the trial the Defendant filed a motion in limine to preclude mention in the presence of jurors or prospective jurors of "any alleged prior criminal activity not directly related to the facts and circumstances at trial" and "any alleged threats made to prospective State's witness . . . ." The motion was granted.

During the State's examination of Witness Gill the following exchange took place:

"Q. Okay. All right. Now, referring your attention to the evening of September thirtieth (30th), 1980, do you

remember seeing Mr. Bradford on that evening?

"A. Yes, sir.

"Q. Okay. And where was the place where you saw him first that evening?

"A. Coming down Central Avenue and went in the apartment building.

"Q. Okay. Now, earlier in the day— maybe it wasn't in the evening, I'm not sure, but earlier in the day, had you seen him?

"A. Yes, sir.

"Q. Where had you seen him?

"A. Beating Boobie up.

MR. PLATH: What?

"A. Beating James up.

"Q. Do you call James Boobie?

"A. Uh huh.

"Q. Is that another name of James?

"A. We call him ..." (R. at 218–219)

Defendant objected and moved for a mistrial, but the motion was denied. Defendant contends that the State violated the court's order on the motion in limine, that the testimony was irrelevant, that the testimony substantially prejudiced the Defendant, and that his motion for a mistrial should have been granted.

■ The denial of a motion for mistrial will be reversed only upon a showing of an abuse of discretion by the trial court. The case must be reversed only if the statement was so prejudicial as to have placed the defendant in "a position of grave peril to which he should not have been subjected." *Morgan v. State,* (1981) Ind., 419 N.E.2d 964, 967. The declaration of a mistrial is an extreme action which is warranted only "when no other action can be expected to remedy the situation." *Gambill v. State,* (1982) Ind., 436 N.E.2d 301, 304; *Hicks v. State,* (1979) Ind., 397 N.E.2d 973, 975. The burden is on the defendant to show that he was harmed and placed in grave peril by the denial of the mistrial motion. *White v. State,* (1971) 257 Ind. 64, 77–78, 272 N.E.2d 312, 319–20.

Defendant correctly notes that in certain cases in which an uncalled for response by a witness notifies a jury that a defendant has been convicted of prior crimes the testimony may so irrevocably prejudice a jury that a mistrial would be necessitated. *Fisher v. State,* (1973) 259 Ind. 633, 642, 291 N.E.2d 76, 81. However, in the case at bar, no reference was made that would indicate that Defendant had been *convicted* of prior crimes. Further, Ms. Gill's testimony had not been induced by the Prosecutor's question, nor was her testimony intended as an "evidentiary harpoon."

In a case such as this, an admonition to the jury is warranted, and the court asked, "Do you want the jury to be admonished about the fight, to disregard it?", but the Defendant opted to stand on his mistrial motion; hence no admonishment was given.

■ Inasmuch as the witness' remark was not solicited and apparently made without any design to harm the Defendant, and because Defendant failed to show that he was placed in a position of grave peril and declined the offered admonishment, it cannot be said that error was committed.

### ISSUE II

The Defendant was originally charged on September 30, 1980. On December 4, 1980, the State amended its Information by adding an allegation that the Defendant was an habitual offender pursuant to Ind.Code § 35–50–2–8 (Burns Supp.1982); however, Defendant contends that a failure to arraign him on the habitual offender count constituted reversible error.

■ The arraignment is the procedure of bringing the accused before the court, notifying him, usually by reading the information or indictment, of the charges against him, and then asking for his plea. *Rodgers v. State,* (1981) Ind., 415 N.E.2d 57, 58. It is unclear from the record whether the Defendant waived a reading of the charge against him on the habitual offender count. The Defendant contends that there was no arraignment, yet the record suggests that an arraignment on the habitual offender count did take place as evidenced by the following exchange between the court, the Prosecutor, Mr. Winingham, and the De-

fense Attorney, Mr. Plath, regarding a motion to correct the spelling of the Defendant's first name on the Information:

"THE COURT: All right, we'll show the State's Motion to Amend—yeah, it's on the minutes of the Court records, but it hasn't been physically done on the, on the Information. So at this time the Court will sustain the, again sustain the motion of the Defense—or, I mean—of the State and show his name to be D-u-r-y.

"MR. WININGHAM: Thank you, Judge. And we'd also need to—that also goes for the Habitual Criminal count, as I said. So the Court would need to amend its copy of that, also.

"THE COURT: Any objection to that?

"MR. PLATH: No, because *I think we did that at arraignment.* I—I just wasn't sure. Well, that's okay." (emphasis added)

In addition, the motion to correct errors did not present this alleged error. Consequently, error, if any, has been waived. *Akins v. State,* (1981) 429 N.E.2d 232, 236; *Guardiola v. State,* (1978) 268 Ind. 404, 405, 375 N.E.2d 1105, 1107; Ind.R.Tr.P. 59 (B, G). Further, the Defendant was able to consult with his attorney, declared that he was prepared to go forward on the date of the trial, made no request for a continuance, and failed to show that he was prejudiced in any way by a failure to arraign him on the habitual offender count, if, in fact, there had been no arraignment. It is always the appellant's burden to show affirmatively that the error complained of was prejudicial. *Yager v. State,* (1982) Ind., 437 N.E.2d 454, 463; *Badelle v. State,* (1982) Ind., 434 N.E.2d 872, 878. Defendant has failed to show that he was harmed in any way. We find no error.

### ISSUE III

Upon the habitual offender charge the jury returned the following verdict:

### VERDICT

"We, the Jury, find the defendant DURY BRADFORD has two (2) prior unrelated felony convictions and guilty as charged in Count Three."

/S/ Robert J. Miller
FOREMAN

Defendant argues that inasmuch as an habitual offender charge is not a crime, the defendant cannot be "guilty." For the court to have accepted this verdict, Defendant argues, was fundamental error.

■ This Court recently addressed the same issue in *Taylor v. State,* (1981), Ind., 420 N.E.2d 1231, 1235. In *Taylor,* the Court held that in an habitual offender proceeding the jury's use of the word "guilty" is technically incorrect, but does not constitute reversible error.

Defendant correctly notes that there is no crime of being an habitual offender. The jury's task in the habitual offender proceeding is merely to determine whether the defendant has, in fact, been convicted and sentenced on two prior felony charges. *Williams v. State,* (1982) Ind., 431 N.E.2d 793, 795. In the verdict, the jury determined that the Defendant had "two (2) prior unrelated felony convictions." The addition of the word "guilty" in the verdict is mere surplusage.

### ISSUE IV

Defendant argues that the trial court committed reversible error in setting the trial for a date beyond the seventy day limit of Criminal Rule 4(B). On October 2, 1980, the Defendant requested an early trial. At a pre-trial conference on December 2, 1980, he stood on his speedy trial request and objected to any continuance of the pre-trial conference. On December 8, 1980, finding the calendar congested for December 10, 1980, the original trial date, the Court sua sponte continued the trial date to December 17, 1980, a date beyond the seventy (70) day limit.

Again, we note that the Defendant failed to raise this issue in his motion to correct errors. Nevertheless, the issue is easily dis-

posed of on its merits; thus, we address it here.

Ind.R.Crim.P. 4(B)(1) provides:

"Defendant in jail—Motion for early trial. If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule."

As Defendant correctly notes, the prosecutor did not "file a timely motion for continuance," as Ind.R.Crim.P. 4(B)(1) contemplates. This Court, however, has held on several occasions that the trial court may, on its own motion, schedule a trial for a day beyond the seventy-day period, when the congested nature of its calendar precludes a trial date within the early trial time frame. *Jordan v. State,* (1982) Ind., 435 N.E.2d 257, 258; *Loyd v. State,* (1980) Ind., 398 N.E.2d 1260, 1265, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105; *Gill v. State,* (1977) 267 Ind. 160, 164, 368 N.E.2d 1159, 1162; *Harris v. State,* (1971) 256 Ind. 464, 466, 269 N.E.2d 537, 539.

In *Loyd,* 398 N.E.2d at 1265, the Court reasoned:

"The court calendar may be congested by a variety of circumstances, among them the unavailability of essential personnel or physical facilities. We hold that any exigent circumstances may warrant a reasonable delay beyond the limitations of Ind.R.Crim.P. 4, due deference being given to the defendant's speedy trial rights under the rule. The reasonableness of such delay must be judged in the context of the particular case, and the decision of the trial judge will not be disturbed, except for an abuse of discretion."

Further, while the Defendant, on December 2, 1980, objected to the continuance of the pre-trial conference, the record discloses no objection made by the Defendant on December 8, 1980, when the court continued the trial date to December 17th. In *Wilburn v. State,* (1982) Ind., 442 N.E.2d 1098, 1103, this Court held that unless a timely objection to the setting of the trial date outside the seventy (70) day limit is made, the request for an early trial date is deemed to have been abandoned. When, prior to the expiration of the seventy (70) day period, the trial court sets a date for the trial which is beyond that period and the defendant is aware or should be aware that the new date is beyond that period, he must object at the earliest possible opportunity. If he does not, he will be deemed to have acquiesced to the new trial date. *Little v. State,* (1981) Ind., 415 N.E.2d 44, 46.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.